# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALLSTATE LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>JEFFREY STILLWELL, et al.<br><br>Defendants. | Civil Action No. 15-8251 (AET)<br><br>MEMORANDUM OPINION |

**BONGIOVANNI, Magistrate Judge**

This matter comes before the Court upon Defendants' letter motion to preclude Plaintiff Allstate Life Insurance Company's ("ALIC") damages expert, Christopher Spadea, from testifying at trial. ALIC opposes Defendants' letter motion. The Court has reviewed all arguments raised in support of and in opposition to Defendants' letter motion and considers same without oral argument pursuant to L.Civ.R. 78.1(b). For the reasons set forth more fully below, Defendants' motion to preclude Mr. Spadea from testifying is GRANTED.

**I.  Background and Procedural History**

This is a breach of contract case in which ALIC is claiming that Defendants Stillwell and Francy violated non-competition and non-solicitation clauses in their contracts with ALIC, misused confidential information and withheld certain contractually owed sums when they left ALIC in September 2015 and began working at Defendant Stillwell Financial Advisors, LLC ("SFA"). Defendant Stillwell, as a Counterclaim, alleges that ALIC has wrongfully withheld deferred compensation payments owed to him.

Discovery began in this case in February 2016 after the Court conducted the initial scheduling conference. While the Court initially set August 30, 2016 as the end date for fact

discovery (*see* Scheduling Order of 2/5/2016; Docket Entry No. 18), it quickly became apparent that the parties would need additional time to complete it. Discovery in this matter was contentious and the Court addressed issues raised by the parties on multiple occasions, including, but not limited to, the conferences held on May 12, 2016, July 5, 2016, November 17, 2016, and January 4, 2017.

In January 2017, the Court discussed referring this matter to mediation. The Court also advised the parties that the discovery schedule would be adjusted. *See* Minute Entry of 1/4/2017. On March 1, 2017, in order to focus the parties' discovery efforts, the Court entered a Text Order, directing the parties to complete discovery necessary to facilitate mediation by May 26, 2017. Text Order of 3/1/2017; Docket Entry No. 63. On May 30, 2017, the Court conducted a conference with the parties during which it extended the time within which depositions necessary to facilitate mediation could occur. It also directed the parties to submit the name of their selected mediator by June 30, 2017. *See* Minute Entry of 5/30/2017. On July 17, 2017, the Court entered an Order referring this case to Mediation and staying the matter until November 30, 2017. Order Referring Case to Mediation of 7/17/2017; Docket Entry No. 64. Unfortunately, the matter did not settle. As a result, On December 4, 2017, the Court entered a new schedule, setting fact discovery to close on March 30, 2018. Text Order of 12/4/2017; Docket Entry No. 69. Although the parties were working cooperatively, it became clear in March 2018 that another extension of the discovery schedule would be necessary. As a result, during the conference held on March 14, 2018, the Court extended the fact discovery deadline to May 31, 2018. *See* Text Minute Entry of 3/14/2018.

Thereafter, discovery issues arose that the parties were unable to resolve without court intervention. As a result, the Court cancelled the telephone conference scheduled for June 6, 2018 and scheduled an in person hearing to take place on June 28, 2018. *See* Letter Order of 5/31/2019;

2

Docket Entry No. 71. During the hearing, the Court considered three issues raised by Defendants. In doing so, the Court indicated that when it extended the fact discovery deadline from March 30, 2018 to May 31, 2018, it intended the extension to be the last one: "I think it was in March where I extended [the deadline] one more time, and it should have been placed on my radar that this [issue] was coming." Transcript of Proceedings of 6/28/2018 at 51:5-7; Docket Entry No. 76. As a result, the Court determined that certain subpoenas issued by ALIC were untimely and quashed same. *Id*. at 51:1-3. In so doing, the Court highlighted the importance of its deadlines and the need to comply with same:

> But on timeliness, I think, you're clearly aware that there were customers at issue, and this is something that even if it was very simply a, "Judge, we have this loose end, we may be asking you for an extension," and I didn't get any sort of placeholder. **My deadlines do need to mean something**.

*Id*. at 51:12-17 (Emphasis added).

After ruling on the aforementioned issues, the Court entered an Amended Scheduling Order, requiring ALIC to comply with Defendants' Rule 30(b)(6) deposition notice by August 21, 2018, setting a schedule for dispositive motion practice and noting that the exchange of expert reports and expert depositions would take place after the parties' dispositive motions were addressed. Amended Scheduling Order of 7/12/2018; Docket Entry No. 75. Dispositive motions, however, were not filed in accordance with the Court's Amended Scheduling Order because additional discovery issues arose regarding Defendants' Rule 30(b)(6) deposition of ALIC. As a result, the Court adjourned the deadline for filing dispositive motions, indicating that it would be reset after the newly raised discovery issues were addressed. Text Order of 10/5/2018; Docket Entry No. 82. The Court discussed these issues during the telephone conference held on October

9, 2018. Thereafter on October 29, 2018, the Court reset the dispositive motion filing deadline to December 7, 2018. Text Order of 10/29/2018; Docket Entry No. 83.

Two days prior to the filing deadline for dispositive motions, the Court received a letter from Defendants regarding subpoenas served by ALIC in a matter pending in the Northern District of Illinois. The Court addressed same in its Letter Order of 12/6/2018; Docket Entry No. 84. In so doing, the Court made it plain that after over two years, fact discovery was closed and would not be reopened or further extended:

> As should be abundantly clear to all parties, fact discovery in this matter is closed. As such, no additional information may be produced by any party. More importantly, no party may rely on any information not already produced during the fact discovery period. No party is entitled to pursue additional fact discovery and no party may rely on information not already produced in this case.

*Id*. at 2.

The parties filed their summary judgment motions in accordance with the December 7, 2018 deadline set by the Court. (*See* Docket Entry Nos. 85 and 89). Shortly thereafter, the Court began having additional settlement discussions with the parties. In light of these discussions, the parties' summary judgment motions were administratively terminated. *See* Letter Order of 2/11/2019; Docket Entry No. 96. When it became apparent that the matter would not settle, the Court reinstated the summary judgment motions. *See* Letter Order of 3/1/2019; Docket Entry No. 97. Ultimately both ALIC and Defendants' partial motions for summary judgment were granted in part and denied in part. *See generally*, Opinion and Order & Judgment of 5/16/2019; Docket Entry Nos. 112 and 113. Defendants sought reconsideration of the District Court's Opinion and Order of May 16, 2019, but that request was denied. *See* Order of 7/24/2019; Docket Entry No. 121. This Court then requested that the parties submit a proposed revised expert discovery schedule. *See* Text Order of 7/25/2019. On August 9, 2019, the Court set a schedule for the

identification of experts and the exchange of expert reports, and also included a date for a telephone conference and the Final Pretrial Conference. Letter Order of 8/9/2019; Docket Entry No. 125.

On October 4, 2019, ALIC identified Mr. Spadea as its damages expert and served his report. On October 28, 2019, Defendants submitted the instant dispute to the Court seeking to preclude Mr. Spadea from testifying at trial.

Defendants argue that Mr. Spadea should be precluded from testifying at trial because in his report, he relies on documents not previously produced in discovery as well as information from a fact witness not identified by ALIC as having relevant information, and because the Spadea Report discloses new damages theories related to Count III of ALIC's Amended Complaint. With respect to the documents not produced in discovery, Defendants specifically identify two documents relied upon by Mr. Spadea that were neither Bates stamped nor produced in discovery: (1) a document titled "2015 New Business Profitability Summary"; and (2) a document described as a "2015 Year End, Projected Lifetime Profitability of New Sales based on actuarial expectations." Similarly, Defendants point to discussions Mr. Spadea had with Mr. Tom Klink, a Director at ALIC, and argue that the Spadea Report inappropriately relies upon same because Mr. Klink was never identified by ALIC as an individual likely to have discoverable information in ALIC's Corrected Second Amended Rule 26(a)(1) Disclosures, or as ALIC's Rule 30(b)(6) designee, or at any other point in discovery. Defendants maintain that Mr. Spadea should be precluded from testifying in this case in light of his reliance on this previously unproduced information.

Further, as noted above, Defendants argue that Mr. Spadea should be precluded from testifying because his report discloses new damages theories related to Count III of the Amended Complaint, which involves ALIC's claim for misappropriation of trade secrets. In this regard,

Defendants claim that Mr. Spadea opines that the appropriate basis of damages is Defendant Stillwell's transition bonus from Ameriprise Financial, Inc. ("Ameriprise"). Defendants argue that ALIC never previously relied upon or identified this transition bonus as a basis for damages. Second, Defendants argue that Mr. Spadea also opines that in addition to these damages, ALIC is entitled to $250,000 in unjust enrichment damages based on the commission Defendant Stillwell received on the Munoz trucking transaction. Defendants argue that this is inappropriate because ALIC only asserted damages regarding the Munoz trucking transaction on a lost profits theory, not an unjust enrichment theory. In light of the foregoing, Defendants argue that Mr. Spadea should be precluded from testifying at trial.

ALIC, however, argues that Mr Spadea's opinions are entirely appropriate and that he should not be precluded from testifying at the trial of this matter. In this regard, ALIC maintains that Mr. Spadea's opinions are based on "documents produced in discovery and the express testimony of Stillwell, Francy, Scott Cohen[;]" in other words "documents, testimony, and evidence readily in the possession of Defendants." (Letter From James s. Yu to Hon. Tonianne J. Bongiovanni of 11/26/2019 at 3). In addition, ALIC claims that Mr. Spadea's conversations with Mr. Klink are not problematic because the discussions concerned only background information regarding ALIC and, pursuant to FED.R.EVID. ("FRE") 703, ALIC's expert "can converse with knowledgeable individuals within a company . . . to corroborate facts that from the basis of his opinion." (*Id*. (citing *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 292 (3d Cir. 2012).

Further, ALIC maintains that Mr. Spadea has not advanced a new damages theory in his report. Indeed, ALIC notes that "[u]nder the New Jersey Trade Secrets Act ("NJSTA"), a complainant is entitled to recover damages for misappropriation, which 'can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that

6

is not taken into account in computing actual loss.'" (*Id.* (quoting N.J.S.A. § 56:15-4)). ALIC argues that Mr. Spadea's opinion cannot rightfully be characterized as disclosing a new theory given the course of discovery in this case, that fact that ALIC's misappropriation of trade secrets claim has been known since the inception of this litigation and because it "comports with what remedies are available to ALIC under the statute[.]" (*Id.*)

Similarly, ALIC claims that its reliance on the transition bonus paid to Defendant Stillwell by Ameriprise is not a new theory of damages. In this regard, ALIC argues that Mr. Spadea's opinion is derived from the documents produced by Defendant Stillwell and Ameriprise, as well as from Defendants' admissions. As such, ALIC contends that the theory that "Ameriprise unjustly compensated Stillwell based on the expectation that Stillwell would misappropriate ALIC confidential customer information and transition customers to Ameriprise" cannot rightfully be labelled entirely new. Thus, ALIC argues that there is no reasonable basis on which to exclude Mr. Spadea's testimony or opinions.

## II. Analysis

Pursuant to FED.R.CIV.P. ("Rule") 26(a)(1)(A), "without awaiting a discovery request," among other information, parties must provide the other parties with: "the name and, if known, the address and telephone number of each individual likely to have discoverable information" and "a computation of each category of damages claimed by the disclosing party – who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered[.]" Rule 26(a)(1)(A)(i) & (iii). Pursuant to Rule 26(a)(2)(E), parties must "supplement these disclosures when required under Rule 26(e)." Rule 26(e)(1)(A) requires that the disclosures be supplemented or corrected in "a

timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]"

The Court finds that ALIC has failed to comply with its obligations under Rule 26(a) and the Orders entered in this matter. First, while ALIC identified 21 individuals likely to have discoverable information in its Corrected Second Amended Rule 26(a)(1) Disclosures, Mr. Klink was not among them. While under FRE 703 it may be acceptable for a party's expert to speak with knowledgeable individuals within a company to corroborate facts that form the basis of that expert's opinion, that does not mean that the individuals consulted can be omitted from the list of knowledgeable individuals identified in the party's initial disclosures under Rule 26(a)(1)(A)(i). Indeed, FRE 703 has no bearing on a party's obligations under Rule 26(a). Further, nothing in the case cited by ALIC to support Mr. Spadea's reliance on discussions with Mr. Klink – *ZF Meritor*, 696 F.3d at 292 – stands for this proposition. According to ALIC's own admission, Mr. Klink is a "knowledgeable individual[.]" (Letter from James S. Yu to Hon. Tonianne J. Bongiovanni of 11/26/2019 at 3). He should have been identified in ALIC's Corrected Second Amended Rule 26(a)(1) Disclosures.

Second, while ALIC states that Mr. Spadea's opinions are based on "documents produced in discovery" (*Id.*), ALIC never addresses Defendants' claims about the two non-Bates stamped documents relied upon in the Spadea Report, *i.e.*, ALIC's "2015 New Business Profitability Summary" and its "2015 Year End, Projected Lifetime Profitability of New Sales based on actuarial expectations." Given ALIC's failure to address these documents, the Court presumes, as Defendants argue, that they were not produced in discovery. This is unacceptable. The Orders entered in this case made it clear that the parties would not be permitted to rely upon information

not produced in discovery. *See, e.g.*, Letter Order of 12/6/2018 at 2. Mr. Spadea's reliance on the unproduced documents is objectionable.

Third, Mr. Spadea's opinions that (1) the transition bonus received by Defendant Stillwell from Ameriprise is the appropriate basis of damages and (2) ALIC is entitled to additional damages in the amount of $250,000 for unjust enrichment based on Defendant Stillwell's commission on the Munoz trucking transaction are problematic as they were not included in ALIC's Corrected Second Amended Rule 26(a)(1) Disclosures. The Court appreciates that the NJSTA permits a complainant to recover damages for misappropriation, which "can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss." N.J.S.A. § 56:15-4. The Court is also aware that at least one allegation regarding unjust enrichment was included in ALIC's Amended Complaint: "Similarly, Stillwell and SFA are being unjustly enriched by the misappropriation of Allstate confidential, proprietary and/or trade secret information." (Am. Compl. ¶ 171). Rule 26(a)(1)(A)(iii), however, requires more. Indeed, as noted above, Rule 26(a)(1)(A)(iii) requires parties to provide, without awaiting a discovery request: "a computation of each category of damages claimed by the disclosing party – who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered[.]" Here, ALIC's Corrected Second Amended Rule 26(a)(1) Disclosures do not disclose that ALIC intended to pursue damages in the amount of $250,000 for unjust enrichment based on Defendant Stillwell's commission on the Munoz trucking transaction. Nor is there any indication that unjust enrichment damages were explicitly explored in discovery. Similarly, ALIC's Corrected Second Amended Rule 26(a)(1) Disclosures do not reference the

9

transition bonus received by Defendant Stillwell from Ameriprise Financial, Inc. as an appropriate basis of damages. Consequently, given ALIC's failure to comply with its discovery obligations and obligations under Rule 26(a), it was inappropriate for Mr. Spadea to opine as much.

Rule 37 authorizes the Court to impose a wide range of sanctions on a party who has failed to comply with its discovery obligations. In this regard, Rule 37(b)(2)(A) provides:

> If a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following: . . . (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence[.]

Further, Rule 37(c)(1) provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

In deciding whether to impose sanctions under Rule 37(c)(1), the Court considers four factors:

> (1) prejudice or surprise to the Plaintiffs; (2) the ability of Plaintiffs to cure the prejudice; (3) the likelihood of disruption; and (4) the Defendants' bad faith or unwillingness to comply. These factors are nearly identical to the factors this Court considers when deciding to exclude evidence under Rule 37(b)(2): (1) the prejudice or surprise to Plaintiffs; (2) the ability of Plaintiffs to cure that prejudice; (3) the extent to which the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness of Defendants in failing to comply with the court's order.

*Wachtel.*, 239 F.R.D. 81, 104-05 (D.N.J. 2006) (citations omitted).

### 1. Prejudice or Surprise to Defendants

The Court finds that Defendants have been prejudiced by ALIC's expert's reliance on information not produced in discovery in formulating his opinions as well as the expert's opinions regarding both the transition bonus being a basis of damages and his unjust enrichment theory of damages. Defendants should have had the opportunity to take discovery on same. They should have had access to the two unproduced documents and the ability to depose Mr. Klink. Further, Defendants should have been able to explore in detail the theory that the transition bonus received by Defendant Stillwell from Ameriprise was being used as a basis of damages. Similarly, Defendants should have been able to conduct significant discovery on the theory that they should be responsible for $250,000 in damages for unjust enrichment based on Defendant Stillwell's commission on the Munoz trucking transaction. Defendants were denied the appropriate opportunity to do so because of ALIC's aforementioned failure to comply with its discovery obligations and its obligations under Rule 26(a). Moreover, the fact that Defendants' expert may be able to address the undisclosed information does not cure the prejudice. Because of ALIC's untimely disclosures, Defendants have been denied the opportunity to arm their own expert with additional evidence regarding the previously unproduced information, thereby impairing their expert's ability to challenge the assertions contained in the Spadea Report.

### 2. Ability of Defendants to Cure the Prejudice

Here, the Court finds that Defendants would be unable to cure the prejudice caused by ALIC's reliance in the Spadea Report on information not properly disclosed during fact discovery. Given the course of litigation in this matter, fact discovery was a drawn-out process. On more than one occasion, the Court indicated its frustration with the lack of compliance with the court-

ordered fact discovery deadlines. For example, on June 28, 2018, the Court, in quashing certain subpoenas issued by Plaintiffs as untimely, expressed Its exasperation by the parties' failure to inform the Court that a further extension of discovery may be required. As outlined above, the Court stressed that: "**My deadlines do need to mean something**." Transcript of Proceedings of 6/28/2018 at 51:12-17 (Emphasis added).

Further, on December 6, 2018, the Court explicitly and emphatically determined that fact discovery was closed and would not be reopened:

> As should be abundantly clear to all parties, fact discovery in this matter is closed. As such, no additional information may be produced by any party. More importantly, no party may rely on any information not already produced during the fact discovery period. No party is entitled to pursue additional fact discovery and no party may rely on information not already produced in this case.

Letter Order of 12/6/2018 at 2. The Court's scheduling orders mean something. Indeed, they "'are at the heart of case management'" and integral to the Court's control of its docket. *Estate of Harrison v. Trump Plaza Hotel & Casino*, Civil No. 12-6683 (RBK/KMW), 2015 WL 6951691, at *2 (D.N.J. Nov. 11, 2015) (quoting *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d Cir. 1986)). Parties should take comfort from the fact that they can rely upon the deadlines set by the Court. Indeed, it should be the parties' expectations that the deadlines set by the Court are fixed and intended to govern the matter going forward. Otherwise, the entire process would be undermined. *See GlobespanVirata, Inc. v. Texas Instruments, Inc.*, 2015 WL 1638136, at *4 (D.N.J. July 12, 2005) (noting that "'scheduling orders are the heart of the case management [and cannot] be flouted'" as they "'are designed to offer a degree of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed and the case will proceed.'") (Citations omitted).

12

Under the circumstances presented here, it would not only be inconsistent, but it would be unfitting to reopen discovery now. The Court could not have been any clearer regarding the parties' obligations. Nor could the Court have been any clearer regarding their inability to rely on information not produced during the fact discovery period. ALIC knew it was obligated to produce all information it intended to rely upon to prove damages during discovery and that it was obligated to disclose its theories of damages and its computations of same before fact discovery disclosed. Indeed, ALIC was obligated to disclose the latter as part of its initial disclosures. Likewise, ALIC was on notice that if it attempted to rely on any unproduced information, it would be precluded from doing so. Thus, here, the Court finds that it would be inappropriate to reopen fact discovery to allow Defendants to cure the prejudice created by ALIC.

Furthermore, the Court finds that the prejudice to Defendants is not cured by the fact that their expert can address Mr. Spadea's opinions in his own report. While Defendants' expert may be able to address Mr. Spadea's opinions using the information included in the Spadea Report, that does not change the fact that Defendants were denied timely access to this information and the ability to obtain discovery on it.

### 3. The Likelihood of Disruption

The Court finds that allowing ALIC to rely on Mr. Spadea's opinions, which rely on information not timely produced/disclosed in discovery, would disrupt these proceedings. As noted above, Defendants were denied the opportunity to obtain discovery regarding (1) the unproduced documents; (2) Mr. Klink's knowledge; (3) the transition bonus being a basis for damages; and (4) that ALIC intended to pursue $250,000 in unjust enrichment damages. To cure this prejudice would require that discovery be reopened. Given the history of this case and the Court's numerous orders and warnings, reopening discovery at this juncture would be

13

inappropriate.[1] It would certainly be disruptive to the just resolution of this matter to permit ALIC to rely on information supporting its damages claims that Defendants did not have access to before fact discovery closed. *See* Rule 1 (stating that "[t]hese rules . . . should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.")

### 4. ALIC's Bad Faith or Unwillingness to Comply

While the Court is not convinced that ALIC acted in bad faith, it is obvious that ALIC did not adequately comply with its obligations to disclose its theories of damages and produce all relevant discovery regarding same. Rule 26(a)(1)(A)(iii) is clear regarding what information a party is obligated to produce as part of their initial disclosures regarding damages. Further, this Court clearly indicated the parties' responsibility to timely produce all information they intended to rely upon at trial. ALIC failed to comply with these directives. It is evident that Mr. Spadea's opinions rely on information not produced in discovery and disclose damages theories not included in ALIC's Initial Disclosures.

After considering the aforementioned factors, the Court finds that sanctions under Rule 37(c)(1) are warranted. ALIC is precluded from relying on the testimony of Mr. Spadea at the trial of this matter. The Court shall, however permit ALIC an opportunity to retain a new damages expert. Any such expert must be identified no later than **March 13, 2020** and his report produced no later than **April 10, 2020**. ALIC, including any expert it retains, is limited to the record as it currently stands, that is information contained in ALIC's Corrected Second Amended Initial

---

[1] Moreover, given how this case has been litigated to date, even if the Court found that an extension of discovery was appropriate, which it does not, the Court would also find that said extension would be disruptive to this litigation, likely prolonging the pretrial of this matter (and therefore delaying the trial of this matter) for several months.

Disclosures, including ALIC's computation of damages, as well as information produced in fact discovery. The new expert, if retained, is precluded from reviewing the Spadea Report and from discussing this case with Mr. Spadea.

### III.     Conclusion

For the reasons stated above, Defendants' letter motion to preclude Mr. Spadea from testifying in this matter is GRANTED. An appropriate Order follows.

Dated:  February 20, 2020

        s/ Tonianne J. Bongiovanni
        **HONORABLE TONIANNE J. BONGIOVANNI**
        **UNITED STATES MAGISTRATE JUDGE**