**\*NOT FOR PUBLICATION\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALLSTATE LIFE INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> JEFFREY STILLWELL, STILLWELL FINANCIAL ADVISORS, LLC and THERESA FRANCY, <br><br> Defendants. <br><br> JEFFREY STILLWELL, <br><br> Counterclaim-Plaintiff, <br><br> v. <br><br> ALLSTATE LIFE INSURANCE COMPANY, <br><br> Counterclaim-Defendant. | Civ. Action No. 15-08251 (FLW) <br><br> **OPINION** |

**WOLFSON, Chief Judge:**

This matter comes before the Court on a motion filed by Plaintiff Allstate Life Insurance Company ("Plaintiff" or "ALIC") for an award of $519,347.60 in contractual attorneys' fees, arising out of the prosecution of its claims against Defendants Jeffery Stillwell ("Stillwell"), Theresa Francy ("Francy"), and Stillwell Financial Advisors, LLC ("SFA" and collectively, "Defendants"). Defendants oppose the motion. For the reasons set forth herein, the motion is **GRANTED**; Plaintiff is awarded attorneys' fees in the adjusted amount of $481,607.10.

1

I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The facts of this litigation are familiar to the parties and set forth in detail in Judge Thompson's[1] May 16, 2019 Opinion resolving the parties' motions for summary judgment. *See* ECF No. 112; *Allstate Life Ins. Co. v. Stillwell*, No. 15-08521, 2019 WL 2743697 (D.N.J. May 16, 2019). As a brief background, however, the Court will summarize the salient facts of this case and set forth the procedural history for purposes of resolving the instant motion.

Plaintiff is a life insurance company for whom Defendants Stillwell and Francy previously worked. Stillwell served as an Exclusive Financial Specialist ("EFS") for Plaintiff from 2008 until September 2015, and Francy worked as Stillwell's Operations Manager during that same time period. *See Stillwell*, 2019 WL 2743697, at *1. Stillwell and Francy both entered into independent contractor agreements with ALIC, which included non-compete, non-solicitation, and confidentiality clauses. *Id.* In September 2015, Defendants Stillwell and Francy left ALIC and began working at Defendant SFA. *Id.* On November 23, 2015, Plaintiff commenced this action, accusing Defendants of violating the non-compete and non-solicitation clauses in their respective agreements with ALIC, misusing confidential information and trade secrets, such as ALIC customer contact and policy information, and withholding contractually owed sums, including repayment of advanced commissions and bonuses. *Id.* Stillwell contended, as a counterclaim, that Plaintiff improperly withheld payments owed to him. *Id.* Shortly thereafter, the parties entered into a stipulation and consent order for a preliminary inunction, enjoining Defendants' access and use of ALIC's confidential information, and enjoining Stillwell from soliciting, selling, or servicing life insurance policies, annuity contracts, or other business, in competition with the business of ALIC. *See* ECF No. 11. That stipulation was

---

[1] This matter was originally assigned to Hon. Anne E. Thompson, U.S.D.J.; it was reassigned to this Court on July 5, 2022. *See* ECF No. 175.

ultimately extended into September 2016.  *See* ECF No. 22, 36.

On June 1, 2016, Plaintiff filed its Amended Complaint, alleging seven causes of action: "(I) breach of contract against Defendant Stillwell for competing with Plaintiff and mishandling confidential information and trade secrets (Am. Compl. ¶¶ 141–60, ECF No. 39); (II) breach of contract against Defendant Stillwell for failure to reimburse Plaintiff 'for all unearned and/or advanced commissions and bonuses' (*id.* ¶¶ 161–64); (III) misappropriation of trade secrets against all Defendants (*id.* ¶¶ 165–82); (IV) tortious interference with contractual relationships against Defendant SFA (*id.* ¶¶ 183–89); (V) tortious interference with business relationships against all Defendants (*id.* ¶¶ 190–201); (VI) unfair competition against all Defendants (*id.* ¶¶ 202–07); and (VII) breach of contract against Defendant Francy (*id.* ¶¶ 208–20)." *Stillwell*, 2019 WL 2743697, at *7.  Defendant Stillwell asserted the following the counterclaims: "(I) breach of contract (Counterclaim ¶¶ 28–36, ECF No. 9); (II) breach of the implied duty of good faith and fair dealing (*id.* ¶¶ 37–43); and (III) tortious interference with prospective economic advantage and relations (*id.* ¶¶ 44–47)." *Id.*

Following discovery, both sides moved for summary judgment.  *See* ECF No. 85, 89.  On May 16, 2019, Judge Thompson granted partial summary judgment in favor of Plaintiff, on liability only, as to Counts I, II (only as to the $34,875.17 sum, referred to as the "Life Protection Bonus" or "LPB"), III, VI, and VII, with "amount[s] to be determined at an inquest on damages," and in favor of SFA as to Count IV.  *See* ECF No. 113. With respect to Stillwell's Counterclaims, Judge Thompson granted partial summary in his favor on Counterclaim I, only as to the $98,683.36 sum, referred to as to the "Assets Captured Bonus" or "ACB."  *Id.*   Judge Thompson denied Defendants' motion for reconsideration on July 24, 2019.  *See* ECF No. 120; *Allstate Life Ins. Co. v. Stillwell*, No. 15-08251, 2019 WL 3315493 (D.N.J. July 24, 2019).

The issue of damages was never addressed because, on March 10, 2021, Judge Thompson

granted the parties' joint motion to dismiss all the remaining claims in the case, including Count V of Plaintiff's Amended Complaint, and Counts II and III of Stillwell's Counterclaim.  *See* ECF No. 143, 144.  As part of the joint motion, Plaintiff voluntarily waived its right to seek compensatory damages, punitive damages, or any other form of monetary damages against Defendants, aside from attorneys' fees and costs under Fed. R. Civ. P. 54(d).  *Id.*

On April 22, 2021, Plaintiff filed a motion for taxation of costs, which the Clerk granted in part and denied in part on December 28, 2021, entering judgment in favor of Plaintiff against Defendants in the amount of $11,823.70.  *See* ECF No. 166.  Defendants moved to vacate the order.  *See* ECF No. 167.  This Court affirmed the Clerk's Taxation Order on August 8, 2022, finding that Plaintiff, having achieved some of the benefits it sought in bringing suit, is the prevailing party in this litigation for taxation of costs purposes.  *See* ECF No. 179.

In tandem with the motion for taxation of costs, Plaintiff filed the present motion for attorneys' fees.  ECF No. 153 ("Pl. Mot.").  Defendants opposed the fee petition on May 28, 2021.  ECF No. 155 (Defs. Opp.").  Plaintiff filed its reply on June 17, 2021.  ECF No. 158 ("Pl. Reply").

**II.    DISCUSSION**

Plaintiff seeks $519,347.60 in attorneys' fees.  In support of its fee petition, Plaintiff asserts that it is the prevailing party in this litigation due to its successful prosecution of certain claims for breach of contract, misappropriation of trade secrets, and unfair competition against Defendants.  While Plaintiff did not prevail on all of its claims, and although Stillwell was awarded a monetary judgment on one of his counterclaims, Plaintiff maintains that the summary judgment rulings in its favor implicate the agreements between ALIC, Stillwell, and Francy, which contractually provide that ALIC is entitled to reasonable attorneys' fees in the event that it successfully brings an action premised on breach of the agreements' restrictive covenants.  Plaintiff further argues that the fees sought are indeed reasonable under the "lodestar method" of calculation.

Defendants contend that Plaintiff's fee petition should be denied in its entirety because Plaintiff is not the prevailing party in this case. In the alternative, Defendants argue that, even if this Court finds that Plaintiff is the prevailing party, (i) Plaintiff should be barred from recovering certain categories of fees, and (ii) Plaintiff's fees should be reduced for lack of success and poor billing judgment.

I find that, as the prevailing party, Plaintiff is entitled to an award of attorneys' fees consistent with the adjustments set forth below.

### A. Prevailing Party

"Generally, the right of a party or an attorney to recover attorney's fees from another party in a diversity action is a matter of substantive state law." *Mitzel v. Westinghouse Elec. Corp.*, 72 F.3d 414, 417 (3d Cir. 1995) (citations omitted). Although "New Jersey has a strong policy disfavoring shifting of attorneys' fees," a well-established exception to this policy is that "a party may agree by contract to pay attorneys' fees." *North Bergen Rex Transp., Inc. v. Trailer Leasing Co.*, 158 N.J. 561, 569–70 (1999) (citations omitted). "[C]ontractual provisions establishing such arrangements are strictly construed." *Kellam Assocs., Inc. v. Angel Projects, LLC*, 357 N.J. Super. 132, 138 (App. Div. 2003). Here, both Stillwell and Francy entered into contracts with ALIC that include fee-shifting provisions regarding attorneys' fees. Specifically, Stillwell's Exclusive Financial Specialist Independent Contractor Agreement ("EFS Agreement") provides: "[y]ou agree that the Company will be entitled to an award of reasonable attorneys' fees in the event that it is successful in an application for injunctive relief or in an action based upon breach of the foregoing provisions." *See* Defs. Opp., Ex. B at 9. Similarly, Francy's agreement with ALIC, referred to as the "LSP Agreement," provides: "Service Provider agrees that the Company be entitled to an award of reasonable attorneys' fees in the event that it is successful in an application for injunctive relief or in

5

an action based upon breach of the foregoing provisions." *See* Defs. Opp., Ex. C at ¶ 10. There is no dispute that this litigation, which includes claims for breach contract, "falls within the purview of the contractual provision[s] authorizing attorneys' fees and costs." *Kellam*, 357 N.J. Super. at 138.

New Jersey courts apply "the same test for reasonable attorneys' fees in contract cases that [is] use[d] in other attorneys' fee award cases." *Litton Indus., Inc. v. IMO Indus., Inc.*, 200 N.J. 372, 386 (2009). "The threshold issue in determining whether an attorneys' fee award is reasonable is whether the party seeking the fee prevailed in the litigation." *North Bergen*, 158 N.J. at 570 (citing *Singer v. State*, 95 N.J. 487, 494 (1984)). "A two-pronged test governs this determination." *Kellam*, 357 N.J. Super. at 139. First, a party seeking attorneys' fees must "demonstrate that his lawsuit was causally related to securing the relief obtained; a fee award is justified if [the party's] efforts are a 'necessary and important' factor in obtaining the relief." *North Bergen*, 158 N.J. at 570 (quoting *Singer*, 95 N.J. at 494). Second, "the party seeking attorneys' fees [must] show that 'the relief granted had some basis in law.'" *Id.* (quoting *Singer*, 95 N.J. at 494). With respect to the second prong, "[t]he party seeking attorneys' fees need not recover all relief sought, but rather, there must be the settling of some dispute that affected the behavior of the [party asked to pay attorneys' fees] towards the [party seeking attorneys' fees]." *Kellam*, 357 N.J. Super. at 139 (internal quotations and citations omitted); *see also R.M. v. Supreme Court of New Jersey*, 190 N.J. 1, 10 (2007) (a "prevailing party" is one that "succeed[s] on any significant issue in litigation which achieves some of the benefit . . . sought in bringing suit") (internal quotations and citation omitted).

In its August 8, 2022 Order denying Defendants' motion to vacate the Clerk's Taxation Order, this Court found, under a comparable standard, that "Plaintiff is the prevailing party in this litigation." *See* ECF No. 179 at 9. In so finding, this Court explained that "[i]n addition to partially succeeding on Count II, and recovering a $34,875.17 judgment, ALIC obtained judgment in its favor on the liability aspect of four of the other counts of its seven-count Amended Complaint (Counts I, III, VI,

6

VII), in which it sought injunctive relief, in addition to damages." *Id.* at 8.  Further, "[s]etting aside the Agreed Preliminary Injunction Order, the Court's summary judgment ruling that Stillwell and Francy breached their contracts, misappropriated ALIC's trade secrets and engaged in unfair competition, serves as an independent basis for Plaintiff's entitlement to injunctive relief, as well as grounds for seeking attorney's fees." *Id.*  The same conclusion is warranted under *Singer*.  First, Plaintiff's lawsuit was causally related to its success at the summary judgment stage, as Plaintiff sought a ruling that would prevent the unlawful solicitation of ALIC customers and misuse of ALIC's confidential information.  Second, although Plaintiff did not achieve all the relief it sought, between the summary judgment ruling and the confidential settlement agreement that followed, the outcome of this litigation represents "the settling of some dispute that affected the behavior of [Defendants] toward [Plaintiff]." *North Bergen*, 158 N.J. at 571.

Defendants argue that Plaintiff cannot be the prevailing party in this matter because "ALIC was awarded no damages on summary judgment or otherwise, and therefore cannot point to any 'relief ultimately achieved' as a result of the litigation." Defs. Opp. 12.  Defendants also emphasize that Stillwell is the only party that obtained an enforceable judgment in his favor on his counterclaim in the amount of $98,683.36. *See* Defs. Opp. 14.  However, Defendants' exclusive focus on damages is misplaced as the authority to which Defendants point does not preclude a finding that Plaintiff is the prevailing party for attorneys' fees purposes.  Indeed, Defendants rely on cases in which litigants failed to achieve a damages award from a jury. *See, e.g.*, *Tunison v. Continental Airlines Corp., Inc.*, 162 F.3d 1187, 1189–90 (D.C. Cir. 1998) (rejecting prevailing party status where "the jury awarded [the plaintiff] no damages" and the plaintiff did not "demonstrate[] any 'material alteration of the legal relationship' between herself and Continental"); *Prise v. Alderwoods Group, Inc.*, No. 06-1470, 2011 WL 4473148, at *5 (W.D. Pa. Sept. 26, 2011) (rejecting prevailing party status where after jury trail "no relief, not even nominal damages, was awarded"); *Nissim v. McNeil Consumer Prods. Co.*,

7

957 F. Supp. 604, 606 (E.D. Pa. 1997) (rejecting prevailing party status where "the jury returned a verdict finding that plaintiff suffered no damages caused by his unlawful termination and, consequently, the jury did not award back-pay or compensatory damages"). That is not the case here. Rather, the Court entered summary judgment in favor of Plaintiff on the majority of its seven claims against Defendants, and the parties subsequently entered into a confidential settlement agreement prior to a jury determination on damages, partly conditioned on enabling ALIC to seek fees and costs in accordance with Rule 54. *See* ECF No. 143, 144. Under the express terms of Stillwell and Francy's respective agreements with ALIC, and because of Judge Thompson's finding that Stillwell and Francy breached those agreements, Plaintiff is "entitled to award of reasonable attorneys' fees." *See* Defs. Opp., Exs. B, C. As this Court held in its August 8, 2022 Order, Plaintiff is the prevailing party in this litigation given its success at the summary judgment stage.[2]

**B.     Entitlement to Attorneys' Fees Under Lodestar Method**

"Federal and state law on attorney's fee awards is generally similar." *Blakey v. Continental Airlines, Inc.*, 2 F. Supp. 2d 598, 602 (D.N.J. 1998). "The starting point for determining any reasonable fee is to calculate a 'lodestar' amount; that is, the number of hours reasonably expended multiplied by a reasonable hourly rate." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Rendine v. Pantzer*, 141 N.J. 292, 334–35 (1995)). "Courts apply a burden-shifting analysis to calculate the lodestar." *Dee v. Borough of Dunmore*, 548 F. App'x 58, 60 (3d Cir. 2013). "To meet its burden, the fee petitioner must 'submit evidence supporting the hours worked and rates claimed.'" *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (quoting *Hensley*, 461 U.S. at 433).

---

[2] Defendants also argue that "the Court's grant of summary judgment as to liability in ALIC's favor was primarily grounded on a misrepresentation ALIC made to the Court" regarding Defendants' use of contact information from an ALIC database. Defs. Opp. 17. Defendants may not convert their opposition to Plaintiff's fee petition into a motion for reconsideration. Indeed, Defendants previously moved for reconsideration of the summary judgment ruling and that motion was denied. *See* ECF No. 120, 121.

"Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary," and the court can further reduce the hours claimed "by the number of hours spent litigating claims on which the party did not succeed and that were distinct in all respects from claims on which the party did succeed." *Id.* (internal quotations and citations omitted). "Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community," and therefore "the court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* (citations omitted); *see Litton*, 200 N.J. at 387 ("The computation of the lodestar mandates that the trial court determine the reasonableness of the hourly rate of the prevailing attorney in comparison to rates for similar services by lawyers of reasonably comparable skill, experience, and reputation in the community") (internal quotations and citation omitted).

Once the fee petitioner has met its evidentiary burden, "the burden shifts to the respondent to challenge the attorney's hours, hourly rate, and the reasonableness of the product of those numbers." *Dee*, 548 F. App'x at 60. "Following an objection to a fee request, district courts have discretion to adjust the hours and rates and to increase or decrease the lodestar based on other considerations raised by the respondent." *Id.*; *see Rode*, 892 F.2d at 1183 ("The court can adjust the lodestar downward if the lodestar is not reasonable in light of the results obtained."); *Litton*, 200 N.J at 387 (stating that "the court must consider the degree of success in determining the reasonableness of the time expended").

### 1.     *Reasonableness of Rate Charged*

Plaintiff seeks reimbursement of attorneys' fees for work performed by Seyfarth Shaw LPP at the following hourly rates: (i) between $430 and $615 for J. Scott Humphrey, Esq., a partner; (ii) between $305 and $465 for Kristine R. Argentine, Esq., a partner and former associate; (iii) and

9

between $365 and $425 for Robyn E. Marsh, Esq., an associate. *See* Pl. Mot 9; ECF No. 148-1, Decl. of J. Scott Humphrey ("Humphrey Decl."). In support of the requested rates, Plaintiff submits a declaration from J. Scott Humphrey, Esq., wherein he explains that he is a member in good standing of the bar of the State of Illinois and that he has served as one of the lead attorneys on behalf of ALIC in this matter. *See* Humphrey Decl. ¶ 1. Mr. Humphrey states that he has represented ALIC and its related entities in over 60 matters in the past 10 years and that, having personally reviewed all of the billing entries relevant to this matter, he deems the rates and tasks performed to be consistent with those found in other, similar litigation matters. *See* Humphrey Decl. ¶¶ 5, 16. In addition, Plaintiff submits a declaration from Craig A. Domalewski, Esq., wherein Mr. Domalewski attests to the reasonableness of the hourly rates of the Seyfarth Shaw attorneys. *See* ECF No. 148-2, Declaration of Craig A. Domalewski ("Domalewski Decl."). Specifically, Mr. Domalewski states that as the Managing Partner of the New Jersey law firm Dughi, Hewit & Domalewski, P.C., he has extensive experience litigating complex commercial disputes and that he is generally familiar with the rates charged by attorneys in New Jersey handling such matters. *See* Domalewski Decl. ¶¶ 4–5. Based on this knowledge and the information provided to him in connection with this fee petition, including the Humphrey Declaration and associated billing invoices, Mr. Domalewski further states that the billing rates of J. Scott Humphrey "are appropriate and consistent with the billing rates charged by New Jersey attorneys with similar skills and experience" and that the billings rates of the two associates, Ms. Argentine and Ms. Marsh, are similarly appropriate and consistent. *See* Domalewski Decl. ¶ 11; *Apple Corps. Ltd. v. Int'l Collectors Soc.*, 25 F. Supp. 2d 480, 485 (D.N.J. 1998) ("Plaintiffs' counsel 'must produce satisfactory evidence—in addition to [their] own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'") (citation omitted). Finally, Plaintiff points out that the hourly rates requested fall within the median range of hourly rates for lawyers in

New Jersey according to The National Law Journal's 48th Annual Survey of Law Firm Economics (2020). *See* ECF No. 148-3, Ex. C. Importantly, Defendants do not object to reasonableness of the rates charged by the three Seyfarth Shaw attorneys.

In light of the evidence provided by Plaintiff, I find that the requested rates are reasonable "in comparison to rates for similar services by lawyers of reasonably comparable skill, experience, and reputation in the community." *Litton*, 200 N.J. at 387 (internal quotations omitted). Indeed, such rates are consistent with those previously sought and approved in this District. *See, e.g.*, *Asta Funding, Inc. v. Neal*, No. 14-2495, 2017 WL 4330362, at *10–11 (D.N.J. Sept. 29, 2017); *Shelton v. Restaurant.com Inc.,* No. 10-824, 2016WL 7394025, at *6 (D.N.J. Dec. 21, 2016). Thus, Plaintiff has satisfied its initial burden of demonstrating that the requested hourly rates in connection with work performed by Mr. Humphrey, Ms. Argentine, and Ms. Marsh are reasonable.

### 2.     *Reasonableness of Time Expended*

Next, I must address the reasonableness of the time expended on this matter by Plaintiff's attorneys. In considering an applicant's request for fees, "hours that were not reasonably expended," including those which are "excessive, redundant or otherwise unnecessary," must be excluded from the calculation of the lodestar, but only if the opposing party raises a specific objection that is sufficient to provide "the fee applicant with notice of the contested portions of the claimed fee." *Butler v. Frett*, No. 99-4367, 2006 WL 1806412, at *7 (D.N.J. June 29, 2006) (citing *Rode*, 892 F.2d at 1183). Here, Plaintiff seeks reimbursement for 1,248.1 hours of legal work performed by Mr. Humphrey, Ms. Argentine, and Ms. Marsh from 2015 to 2021, amounting to $519,347.60. *See* Pl. Mot. 12. Providing additional context as to this legal work, in his declaration, Mr. Humphrey states that "the Petition for fees excludes time entries, or is appropriately discounted, for fees related to defending against Stillwell's counterclaims, claims on which ALIC did not succeed, or for billers other than [himself], Ms. Argentine, or Ms. Marsh." Humphrey Decl. ¶ 13. As to the referenced

discount, in order to account for interrelated claims on which ALIC was not the prevailing party at summary judgment, Plaintiff applied a 20% discount to the fees corresponding to the work of Mr. Humphrey and Ms. Marsh on Plaintiff's litigation efforts at the summary judgment stage. *See* ECF No. 150-1, Humphrey Decl., Ex. 1.

In response, Defendants argue that Plaintiff is not entitled to recover certain categories of fees included in its requested amount: fees related to defending against Stillwell's counterclaims, fees related to discovery for other cases, and fees incurred through ALIC's attempts to obtain irrelevant and untimely discovery. *See* Defs. Opp. 29–35. As to the fees purportedly associated with Stillwell's counterclaims, Defendants specifically identify: (i) fees related to reviewing and responding to Stillwell's counterclaims for a total of $5,634.50; (ii) fees incurred preparing for, attending, and reviewing the deposition testimony of two witness whose testimony related to Stillwell's counterclaims, for a total of $8,656; and (iii) fees for discovery with respect to compensation issues raised by Stillwell's counterclaims for a total of $3,222. *See* Defs. Opp. 30–31. Plaintiff asserts that portions of these specific fees it seeks to recover necessarily overlapped with components of the case for which it did not seek fees. And, given the interrelated nature of the claims in this case, such overlap is understandable. However, Plaintiff does not explain how this apparent overlap affects these specific billing entries, such that the Court can discern the nature of the overlap. Without such explanation and because Plaintiff represents that it excluded time entries for fees related to defending against Stillwell's counterclaims, Plaintiff must be held to that representation, and additional time so identified must be excluded. Thus, the fees identified by Defendants, totaling $17,512.50, are excluded.

Defendants also specifically identify fees related to the depositions of Tom North and Marice Vinson, totaling $21,811. *See* Defs. Opp. 32. Defendants argue that such fees are unreasonable because the parties agreed that those two deponents would each produce a single deposition to be

12

used in multiple lawsuits, not just the matter at hand. For this reason, Defendants assert that Plaintiff is not entitled to collect all the fees related to those depositions here. *Id.* Plaintiff contends that the testimony of North and Vinson was integral to this matter, including for purposes of document authentication and understanding Stillwell's actions in breach of his agreements with ALIC. *See* Pl. Reply 15. While Defendants do not cite to any authority indicating that a reduction of fees is necessary under such circumstances, in order to reflect the fact that the two depositions were not exclusively related to the present matter, the Court will exercise its discretion to reduce the associated fees by half, thus totaling $10,905.50.

The third category of fees Defendants specifically identify as unreasonable are those fees associated with, what Defendants call, "irrelevant and untimely third-party discovery," totaling $9,322.50. *See* Defs. Opp. 33–35. Specifically, Defendants object to fees related to Plaintiff's failed attempt to subpoena several third parties near, and after, the close of fact discovery. *Id.* at 34. Plaintiff offers no particular justification for assessment of these fees, arguing only that the time entries identified by Defendants overlap, in a general sense, with other discovery matters for which ALIC is entitled to fees. Given Plaintiff's lack of success with respect to the third-party subpoenas and consistent with its intention to forego recovering fees related to failed claims, the Court will exercise its discretion to preclude recovery of the $9,322.50 in fees identified by Defendants.

Taking into account these reductions, the Court calculates that the lodestar amount is $481,607.10. This sum reflects the reasonable hourly rates charged by the Seyfarth Shaw attorneys, the 20% fee discount as to Plaintiff's attorneys' work at the summary judgment stage, and the exclusion of fees related to unreasonable time expended.

### *3.     Defendants' Arguments for Further Reductions*

In addition to Defendants' specific objections to Plaintiff's fee request, Defendants seek fee reductions on the broader grounds that (i) Plaintiff achieved only "limited success" in this litigation

13

and (ii) Plaintiff exercised "poor billing judgment." *See* Defs. Opp. 22–29.  Neither argument is persuasive as applied to this case.

"Beyond the lodestar amount, in cases in which the fee requested far exceeds the damages recovered, the trial court should consider the damages sought and the damages actually recovered." *Litton*, 200 N.J. at 387 (internal quotations and citation omitted).  "That is, when the amount actually recovered is less than the attorney's fee request, the court must consider that fact in determining the overall reasonableness of the attorney's fee award." *Id.*  Relying on this notion and related case law in which courts applied downward adjustments to the lodestar for lack of success, Defendants argue that "ALIC's success in this case was not just limited, it was non-existent" because "[i]t was granted partial summary judgment on four counts as *to liability only*, and was awarded no damages." *See* Defs. Opp. 27.  However, Defendants' argument ignores the critical fact that, as a condition for entering the parties' confidential settlement agreement, Plaintiff agreed to forego its pursuit of damages in this litigation.  *See* ECF No. 143, 144.  This is not a case in which Plaintiff's damages request was denied as a matter of law, or even assessed by the Court or a jury.  Moreover, as New Jersey law recognizes, "there is no precise formula for th[is] portion of the reasonableness analysis" as "[t]he ultimate goal is to approve a reasonable attorney's fee that is not excessive." *Litton*, 200 N.J. at 388.  Here, Plaintiff's fee request already accounts for its partial success at the summary judgment stage.  *See* Humphrey Decl. ¶ 13.  At bottom, Defendants' argument for further reductions based on the lack of a damages award essentially seeks to penalize Plaintiff for agreeing to settle this matter—a proposition for which Defendants can cite no legal support.

Defendants' related objection regarding Plaintiff's "poor billing judgment" faults Plaintiff for "continu[ing] to aggressively prosecute this case for five years" when Plaintiff "should have been aware ALIC had minimal to no damages after one year." *See* Defs. Opp. 29.  But this case was a highly contentious litigation in which both sides expended significant resources to prove liability.

14

Defendants' attempt to minimize their own role in the protracted nature of this legal dispute lacks any factual basis.

Under the plain language of the contracts which Defendants were deemed to have breached, Plaintiff is "entitled to an award of reasonable attorneys' fees." *See* Defs. Opp., Ex. B at 9; Defs. Opp., Ex. C at 2. Having bargained for such terms, Defendants cannot now avoid them because of their dissatisfaction with the outcome of this lawsuit or by hiding behind the terms of a confidential settlement agreement. Because Defendants' arguments for further reductions to this Court's award of reasonable attorneys' fees lack merit, Defendants are responsible for the full amount as calculated above.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's motion for attorneys' fees is **GRANTED**; Defendants must reimburse Plaintiff for its attorneys' fees in the adjusted amount of $481,607.10. An appropriate Order shall follow.

Date: December 6, 2022	/s/ Freda L. Wolfson
	Hon. Freda L. Wolfson
	U.S. Chief District Judge